Thank you. Good morning, ladies and gentlemen. Please be seated. And welcome one and all to the Applied Court, First Division, First District. We have one case on the call for today. When the case is called, by our clerk, I'd like all the lawyers that are sitting at council table to identify themselves for the record. And then when you come up, identify yourself again as you proceed with your argument. You'll have ten minutes to begin, and ten minutes as well, and you can respond for five. But we might have some questions for you, so things might go a little bit longer. So would you call the case, please, madam? 14-1937 Craig Clark v. Illinois State Board of Elections All right. Attorney for the appellants, please. Thank you. Thank you very much, gentlemen. How many are going to argue? How many will argue? We'll be arguinging separate or just eight? Ms. Treaton? Just me. Ms. Casper? All right. Thank you very much, gentlemen, and we're ready to proceed, then, sir. And rest assured, we have read the briefs and the cases contained therein and are well aware of the facts of the case. So please proceed. Good morning, Your Honors. May it please the Court, my name is Tim Eaton, and I represent the appellants. As Your Honors are aware, Article 14, Section 3, as interpreted by our Supreme Court, provides that there may be a direct constitutional amendment initiative limited to structural and procedural changes to subjects contained in Article 4, as long as those changes are not statutory or substantive. Plaintiff's brief argues that this is a very limited ballot initiative process. The trial court bought into that argument and said, quote, precedent dictates a very narrow provision for allowing the voters to directly enact amendments. Mr. Eaton, doesn't the article say that the initiatives must be structural or procedural? Yes. Okay. Because you've got very short time, I have a couple of questions for you. Sure. How do you distinguish CBA 2 on the question of whether term limits are neither structural nor procedural because they do not relate to the legislature as an institution? Your Honor, our proposal specifically does. I read CBA 2 as being very narrow. It says specifically that the eligibility qualifications of individual legislators are not substantive or procedural. It goes on to say why. In one instance, they say with respect to structure, it doesn't affect the institution. With respect to procedure, it says it doesn't affect the process by which bills become law. Our initiative does have both of those components. Term limits in 2F is directly tied into 2A, which relates to the composition of the Senate. It affects both the seniority system by having term limits. It affects the procedure in which the senators are elected. By eliminating the two-year terms? I don't dispute that it has that in there. But CBA 2 says the eligibility or qualifications of an individual legislature does not involve the structure of the legislature as an institution. Then it goes on to say likewise, the eligibility or qualifications of an individual legislature does not involve any of the structure and procedure, the entire initiative is bad from a constitutional standpoint. So I suppose the first issue is we've got to figure out why the Supreme Court wrote this the way they did. Your Honor, I agree. But if you also look on the same page that you're quoting from, the Supreme Court said the controlling legal principles are settled. They also said that with respect to these initiatives, that they look at it based upon prior precedent. So I don't believe that CBA 2 was trying to overrule or distinguish CBA, Coalition 1. I think what we have here are examples of what might be structural changes or procedural changes. And that's what Judge Mitva pointed out, that it doesn't necessarily have to in all instances be something that relates to the institution. But I would submit our initiative does. The term limits. That must be structural and procedural, correct? Correct. And so that's neither, term limits. According to the court. According to the narrow reading. Right, so what do we do with that case? What do we do with that case? Well, Your Honor. Interpret it in your way. What we are saying is that CBA 2 was limited to the facts in that case. It was a very bare bones term limits initiative that only dealt with term limits. Okay, so you say that because your initiative is larger and includes more things, it becomes okay? No. I am saying that because term limits in our proposal affects both structural changes and procedural changes, as well as the other components. I am not suggesting, as the plaintiffs repeatedly say, that somehow we're trying to sneak term limits in as a Trojan horse. We are saying every single element of our initiative is either procedural, structural, or both. But how can you say when CBA 2 says it's not? Because CBA 2 was very limited to its facts. CBA 2 said. But how do you know this? Well, by reading the language of the opinion, Your Honor. It says, likewise, the eligibility or qualifications of an individual legislator does not involve any of the General Assembly's procedures. What we have done in 2F of our proposal, which affects 2A, which deals with the election, we've changed the procedure by which senators could be elected. That was not true in CBA 2. Appointment, that's how individual senators are elected, not how the legislature is elected. And CBA 2 talks about not affecting the legislature as an institution, not the individual legislatures collectively. Well, Your Honor, what it said was because it didn't affect the institution, therefore, it was not structural. And what we are saying is that our proposal does affect the institution. It affects the composition of the Senate in 2A, which is entitled composition, and it specifically eliminates two-year terms, which is a change in how senators are elected. Yes, but the term limit section does not affect the legislature as an institution. It affects individual legislators. Your Honor, they only A legislator elected this year or next year can serve for eight years. A legislator that would be elected two years from there serves for eight more years. So everybody doesn't serve for the same period of time. They serve for individual periods depending upon when they were elected. It involves the change in the procedure in how senators are elected under 2A, specifically involves a change in the procedure. What was going on in CBA 2? It was term limits. CBA 2 did not change 2A. What CBA 2 did was it had a mechanism by which if they had served six years and they couldn't run for a four-year term, it didn't change the two-year terms, it didn't change the structure. We understand it didn't have the other stuff in it. That's your problem with CBA 1 because you've got the CBA 2 problem in the initiative. But I want to talk about only CBA 2 first. We'll get to CBA 1 in a minute. CBA 2 says that the eligibility or qualifications of an individual legislator does not involve the structure of a legislature as an institution. Term limits deal with individual legislators. They don't deal with the institution. Your Honor, that's where I disagree with you. They do deal with the institution. Term limits is going to have a dramatic effect on the composition of the legislature with respect to seniority system, with respect to its makeup, with respect to the institution as a whole. All elements that the framers of the Constitution said were important and were covered by Article 4. Well, that suggests to me that, in truth, you really support what the dissent said in CBA 2. Well, the dissent in CBA 2... We can't affirm them. Well, I understand. The CBA 2 dissent, though, Your Honor, was really focusing more on the words and or or. And they referred to Justice Schaffer's dissent in Coalition 1. We are not making that argument here. What we are saying, unlike the dissent there, is that this particular initiative meets the requirements of all of the Supreme Court precedent. And, Justice Hoffman, to come back to your point, I don't think we can look at CBA 2 in isolation because CBA 2 says repeatedly in it the controlling legal principles are settled. They cite the other cases. I think you have to look at all of the cases in context of this. One other sentence from CBA 2. Sure. The proponents seek to impose a limit on the number of years a state legislator may serve in the General Assembly. That is exactly what your initiative seeks to do. And if that is the case, according to the Supreme Court in CBA 2, your initiative contains language that does not affect the legislature as an institution. And now we've got the CBA 1 problem. CBA 1 turns around and says the proposed amendment is not limited to the structural and procedural subjects of Article 4. Wrapped up in the structure and procedural package is a substantive issue not found in the articles, taxes, etc. and so on. And they want to say that if there is anything in that initiative that does not affect the structure and procedure of the legislature as an institution, the entire initiative is inferred. That's where I disagree, Your Honor. I don't think we have a CBA 1 problem at all. Because our term limits provision does affect the procedure and the structure by amending specifically 2A, which was not the case in CBA 2. Let me say this to you. If we were to find that your term limits portion of the CBA 1 provision does not affect the structural and procedure of the legislature as an institution, it must necessarily follow logically that it's infirmed under CBA 1, would it not? With one qualification, to your hypothetical, or affects a procedure. I think it can affect either the structure or the procedure. Does this shape or loss that bad? No, no, no. What we have here are other elements. And what we're saying with respect to structure and procedure, you have to look at the entire initiative and all the component parts. That's exactly what was the case in Coalition 2. And that battle was won by that initiative because it had things that related to the procedure of elections, such as cumulative voting. It had things to do with the structure of the institution, such as reducing the house size. Not every one of those elements was not structural and procedure. They looked at it as a whole. And that's what you need to do here. We haven't lost that battle. We have followed the precedent of the Supreme Court in every single case through this initiative by having both components. Are you saying that as a whole the proposal has to meet the structural and procedural or not individually? What I am saying is that each individual element, which includes term limits, must address either a structural or procedural element. So not and. Not each individual element. The and is not necessary. You look at, but what we're saying, unlike what the plaintiffs are saying, and I agree with you. I just wanted to understand your position. If we were to find under CBA 2 that the term limits portion does not affect either the legislative process or the procedure by which the Senate is elected, and clearly in this case by eliminating the two-year terms and having just the four-year terms effective, I believe it's 2023, is a change in which the legislature is elected. We are not going to change that. We are not saying that term limits can go up if there are other components of a structural and procedural. I have one other question for you. Yes, sir. Could you explain to me how the notion of term limits is in any way related to the number of votes necessary to override a gubernatorial veto? Your Honor, I believe that what the Court said in Coalition 2, which is really the only case that has dealt with this issue dealing with the free and equal clause, that when you're making changes to Article 4, that's all you need. I think that's enough relatedness. There has never been a case that has overruled an initiative based upon the free and equal clause. Plaintiff side cases, well, there's language here, there's language there. Not one referendum or initiative has been thrown out. Well, what's your common objective, amending Article 4? That could be enough. If you read Coalition 2, all they said there was as long as it related to structural and procedural changes of the House, that was enough. But here we're dealing with the general assembly. But if I follow your logic reasonably, one could take it one step further and say, well, if what the initiative seeks to do is to amend the Constitution, it doesn't make any difference, how do they want to amend it? Because that would be the common objective, amend the Constitution. Put anything you want in there. And that's certainly not what Coalition 2 says. No, I think what Coalition 2 says That's their common objective. Coalition 2 says that if you're seeking to change Article 4, that that's the common objective and that's enough. And if you look at Justice Ryan's dissent, he says that's what the majority is saying. The majority is saying that if you're seeking changes to Article 4, that's enough of a common objective and that's what you're doing. And I think that's enough. And, Your Honor, if I could further say, the Supreme Court, I believe, was clear in Coalition 2, and this language has not been changed since then, that the basic purpose of this article, Article 14, Section 3, was to provide a workable initiative scheme unfettered by restraints which unnecessarily inhibit the rights which this article confers. And I submit that if you read these cases too narrowly, that the general assembly judicial branch is going to be presenting those restraints that the court said shouldn't be there. And that's my concern. Counsel, let me ask you. You say that your common objective is increasing the responsiveness of the general assembly. Yes. And reducing the influence, partisan, and special interests that are contained therein. Correct. A fairly broad analysis, do you not think? It is. So, again, following up with Justice's question, how does the veto power, the percentage of the change of the veto power, relate to that objective? We believe that if the veto number was increased from the three-fifths to the 60 percent, that because the governor is popularly elected statewide, that it would take a little of the influence of special interests off the House and the Senate and be more reflective of the people's as a whole. And, Your Honor, if I may add, I don't think that the scrutiny that the court is to be given to these initiatives is to decide on the merits. Will that work? We think it will. Whether you think it will or not is not an issue. Whether this is a good idea or a bad idea is totally irrelevant to this argument. I agree with you. The whole argument here is does it meet constitutional must or not? Is it a good idea? I agree with you. That's wholly irrelevant. It doesn't even require discussion. The question is about the common objective. Right. How do we know this is going to meet the common objective as far as the veto? We believe that it will for several reasons. One, because we're going to be decreasing so dramatically the size of the Senate, now we're going to have to have a few more senators by increasing it because otherwise the number would be too low. Secondly, we believe that the effect of special interests would be less on the governor as a whole versus the individual House and the Senate. That's our belief. We believe that makes it more responsive. We believe it decreases the influence of special interests. So we are putting all these components together. Are you standing here telling us that your position does not come from special interests of its own, partisanship of its own? Your Honor, there is no question that there's politics involved in this on both sides. Right. And that's inevitable. But what the constitutional framers said is that the legislature, due to their own self-interest, is never going to do this on their own. That's why they had this type of initiative, so they could get past the self-interest and let the voters decide. Six hundred thousand people signed a petition who wanted to vote on these various questions. And that is what the initiative is for. Counsel, can I ask you as far as the dimensions of this initiative? In Coalition 2, the only changes were requested to the House, were they not? Yes. Yeah. So this includes the entire General Assembly. It does. Yeah. And there were two pretty much things that were promoted in the initiative in Coalition 2, the reduction of the size of the House and then single-member districts. Well, Your Honor, I'm glad you brought that up, because actually there's several components to that. If they decided they wanted to have single districts, then they didn't have to change the size of the House. They could have just had a different way in which they elected representatives from single districts. But that was part of the proposal, was it not? Yes, it was. But what I'm saying is that, you know, someone could say, well, I oppose cumulative voting, so I'm going to vote for single districts. But I don't really care about the size of the House. In fact, I think it's the right size. But the questions were all posed interrelated to changes in the House. And that's what, and if you look at what CBA 2 was doing in the majority opinion, they were looking to the State of Arizona, where it's just involved changes to their legislature. Again, I think in that case it was the House. But I think the fact that you add the Senate is just putting up one more obstacle. Say, well, you can't have changes to both the House and Senate. It has to be just the House. That's not what CBA 2 was all about. I understand that. What I'm thinking of is the reaction to the people that are going to be voting on this issue. Yes, I understand. It's fairly complex, is it not? Reduce the Senate, enlarge the House, term limits, Senate districts, all members of eight-year terms, overriding the veto. That's a lot for the electors to digest. We are increasing the size of the Senate districts, which by itself then decreases the Senate. It's a natural cause of that. We are now, because we're increasing the size of the Senate district, saying that there should be three members from each district in the House. And that increases the House slightly. So that's related to the change in the size of the district. We are saying that we need to change the veto procedure because, in part, now that you're going to have fewer Senators, we need to have more Senators involved. And I understand that. So they're all related. But as far as the workable manner of the common objective, what do you mean by that? What do you think the Court means by that? I think what the Court means is that if you put forth an initiative that is going to have components that will change the House that you believe will make it more responsive, House and Senate, that's all you need, Article IV, period. I think the free and equal clause has come up, and it's only come up in the context of Coalition 2, as opponents trying to find some way in which they could defeat the proposal. And the Court rejected it. Well, could there be 25 different issues in an initiative, counsel? If they are related to changes to Article IV? Well, it seems like a mouthful to me. I mean, you know, here you have a voter. He might be in favor of one or two, but not all five. Or if there's 25, he might be in favor of 22, but not the other three. That's not really a workable manner, it seems to me. Well, Your Honor, if you have 25, perhaps. But what we were trying to do was follow the guidelines of CBA 2. Actually, Coalition 1 says you have to have structural and procedural changes. CBA 2 says it can't be just individual qualifications of individual legislators. So when you put all this together, inevitably you're going to have several different proposals in order to meet the test. We were trying to follow that test. We know without question, in our view, that changing the veto is a procedural matter. We also believe that we've changed the procedure in which senators are elected by term limits. Do we know that for sure? No, because this Court could determine it was structural. So we were trying to look at all the different elements. If your argument is as long as everything in the amendment addresses something in Article 4, you don't have a free and equal problem, that's not really what Coalition says. Coalition says separate questions may be combined in a single proposition as long as they are reasonably related to a common objective in a workable manner. Now, the common objective obviously can't be the amendment of Article 4 because you could put a million things in there that have nothing to do with each other and stick them in, but they do affect Article 4, and you'd never have a free and equal problem. There would be no reason to even analyze this under free and equal. If you read the sentence before the one you just quoted, it's talking about changes to the House that would be enough, and then it goes on to say in a workable manner, there has been no case, this would be the first, that has ever applied the free and equal clause to defeat a citizen's initiative. And Coalition 2 is the only case that has dealt with it in the context of a direct initiative, and they said that was fine. And I think, in fact, in Coalition 2, if you read again in the argument, it talks about comparing this to the strict scrutiny test and the right to vote because it's a citizen initiative and we don't want to put these impediments up there. Coalition 2 is absolutely right. CBA 2, unfortunately, is lacking in much analysis, but I think if you read it properly and narrowly, as I believe it should be, if you're going to be reading all the other cases combined with it, it should allow this initiative to go forward. Counselor, as far as a substantive change, what has been ruled on by the courts that we know is a substantive change that's pretty much off limits? Well, actually, oh, as a substantive change, I'm sorry. When you're talking about what the framers have mentioned and what the courts have mentioned, you're talking about like death penalty, abortion. We also had in CBA 1 the tax accountability statute, which they rejected. We also had the Leusine case, which was from this district, which dealt with an initiative that would allow voters to put forth measures. They would actually be introducing bills that then would have to be considered by the legislature. Those are examples of what they consider to be substantive. And by the way, Judge McAvoy was absolutely right. This is not a substantive provision. That was her finding. And we need to get this straightened out because if you read CBA 2 broadly, not only will term limits of any size, shape, or form, and by the way, CBA 2 does not say the subject of eligibility and qualifications. It says eligibility and qualifications in the interest of the legislature. It doesn't say if it touches upon eligibility and qualifications because that's what Judge McAvoy rejected in the MAP redistricting case. She said, well, it's the subject of I can't let this go forward. Now, that can go forward because they don't have enough signatures. But if you continue to read that broadly, it's going to limit the initiative process as if it doesn't even exist. CBA 2 talks about the structure of the legislature as an institution. Yes. It doesn't talk about really structural change. It talks about it as an institution. And it says that the eligibility or qualifications of an individual legislature does not involve the structure of the legislature as an institution. And the way Judge Mitva read it in my opinion. Wait a moment. This is an over-review. So how Judge Mitva viewed it is irrelevant. Your Honor. How we view it is the question. I agree. And what's your argument? I found her argument persuasive, and that's all I was saying. So you were bound by it. But what she held was those are simply examples of what would be a structural change if it affected the institution. She found that's not the only type of structural change. Well, that's not an example of what does affect the structure of an institution. It's an example of what does not. And that's the eligibility of an individual legislature. And that's one example, yes. That example relates to your initiative. Does term limits affect the eligibility of individual legislators? It does and more. And that's what was missing in CBA 2. Hold on a second. You're right. It does and more. But CBA 1 says if any portion of that initiative does not address the structure and procedure of the legislature as an institution, the initiative is infirmed. And I agree with you. And what I'm saying is the term limits, the way this is proposed, is more than what was in CBA 2. Hold on a question. Term limits. So what it does is this term limits proposal does affect the institution, does affect the procedure by which the Senate is elected. I would agree with you if CBA 2 read, an initiative that deals solely with the eligibility and qualifications of an individual legislator does not involve the structure of the legislature as an institution. But it doesn't say that. It says an initiative that deals with that does not deal with the structure or procedure of the legislature. And, Your Honor, all I can say is that you need to read that in context of the other cases. For example, Coalition 1 does not say or the Article 14 does not say you must have both a structural and procedural amendment. But it's been interpreted that way. They're adding the word both. And what I'm saying is if you interpret CBA 2 in the context of Coalition 2, which says it should be read broadly, then our initiative is successful. Okay. Anything further? Thank you very much. Thank you. Mr. Kasper. Good morning, Justices. Thank you, Your Honors. Michael Kasper for the appellants. I'm sorry, the appellees. Let me begin by saying that this term limits initiative that is being proposed here is virtually indistinguishable from the one that the Supreme Court invalidated in CBA 2 in terms of term limits. An individual legislator who has served four years may run for re-election. An individual legislator who has served eight years may not. In that respect, they're exactly the same. They affect individual legislators. The term limits provision does. And for that reason, we believe that CBA 2 and CBA 1 deliver a one-two punch to this initiative that it cannot constitutionally recover from. The discussion that you had with Mr. Eaton makes that clear. CBA 2 specifically says that term limits does not, quote, meet either the structural or procedural requirement of Article 14, Section 3, so that it's neither structural nor procedural. Because this initiative contains that term limits provision, it is neither structural nor procedural. It runs afoul of the very clear language in Article 14, Section 3, that initiatives, quote, shall be limited to, close quote, structural and procedural subjects. That's exactly the analysis that the Court went through in CBA 1, that when any element is included in an initiative that is neither structural nor procedural, it renders that initiative invalid. So in their briefs and in their arguments here today ---- I would take it then from your argument, your argument that's filled with spines would be any initiative that contains the subject of term limits for individual legislatures cannot possibly meet the constitutional requirement. That's correct, under CBA 2. Just that simple. That's correct. Counsel, does the addition of the terms as an institution make any change when CBA 2 throws that in there? I think that as an institution, what the Supreme Court was saying when they said that it doesn't affect the legislature as an institution is distinguished from individual legislatures. And so, for example, the change in the terms that they propose here to make everyone have four-year terms instead of the staggered four, two, and four, that would affect the institution. But term limits, by its nature, affects individuals. And that's what the Court is distinguishing, something that affects the institution versus something that affects individuals. And the fact that they include something that affects the institution doesn't cure the problem that they have something else that affects only individuals. That's the CBA 1 problem that I was talking about. CBA 1 clearly stands for the proposition that if you include other things, along with a non-structural, non-procedural subject, that is constitutionally impermissible. The Court went through exactly the same analysis that the proponents suggest here, that you could wrap up. The word that the Supreme Court used is that they attempted to wrap up with a non-structural, non-procedural subject. That was an increase in the vote requirement to pass tax increase bills. That's essentially what the initiative provided. And it included in their structural things, the size of legislative committees and procedural things, the notice requirement for passing bills. And the Supreme Court said, because you included something that was neither structural nor procedural, the increase in the vote requirement, it doesn't. In fact, the Supreme Court specifically said, we need not focus on whether or not these other elements are structural and procedural. Because once you include something that is neither structural or procedural, it renders the constitutional initiative invalid. So they suggested that we look at this as a whole. Is that incorrect? We look at it individually? You have to look at the component parts. And if there are three component parts in this initiative, maybe there's four. The first is term limits. The second is the size of the legislative districts and the terms. And the third is the veto override. You have to look at each of those. And if you look at it as a whole, then that eliminates, effectively, the language shall be limited to from the Constitution. If the analysis is what they suggest, which is look at it as a whole, the words shall be limited to lose their meaning. And, in fact, that specifically was rejected by the Supreme Court in CBA 1. The committee also suggests that Article 14, Section 3, only prohibits substantive changes or substitutes for legislation. The example that they've used is an initiative regarding the death penalty or abortion or something like that. Well, that's clearly not what the Constitution says. The Constitution says anything that is not structural or not procedural. And so. Counsel, you want to address the argument that's made that gentlemen and women that were at CONCON talked about the composition of the legislature as something that should be considered by initiative? Sure. And so the notion, the composition of the legislature, getting to the structure of the legislature, items like that are talked about in CBA 2, bicameralism, the number of districts, which was obviously the subject of the Coalition 2 case. Those are the types of structural changes that were included. Term limits, the question is whether or not term limits fits into those, and the Supreme Court has already answered that question. The Supreme Court has specifically held that term limits are neither structural nor procedural. And what they specifically said, they addressed both and said, quote, this is on page 509 of their decision, the eligibility or qualifications of an individual legislator does not involve the structure of the legislature as an institution. It will remain bicameral with 177 seats. Do you believe that each individual element of an initiative must be both procedural and substantive? I don't think so. I don't think so. Certainly Justice Schaffer wouldn't have thought so. And the reason I say that, the only case that survived the constitutional challenge is Coalition 2. And one of the elements of that was this cumulative voting business, and I just don't see how that's a structural change. So I think that combined they have to be limited to structural and procedural, and in this case they're not. So each individual element must be either substantive or procedural. Structural or procedural. Structural or procedural. But as a whole, it must be both structural and procedural. Correct. And it must be only structural and procedural. No, no, but you understand, only structural. Under CBA 1, you cannot have something that is neither structural nor procedural lumped in with the rest. Correct. That's CBA 1. Correct. But what I'm trying to get at is whether each individual element must be both structural and procedural, or it's sufficient that all of the elements are either structural or procedural, and there must be something of both. Yeah, and my answer to that is it doesn't matter for purposes of this case because this place clearly has a CBA 1 problem. Yeah. But I think the answer is probably under Coalition 2, if one is procedural and one is structural, that's probably a problem. But like I said, that's not the case here because you clearly have an element that is neither. On page 3 of their reply brief, the appellants say that CBA 2, quote, never held that the subject of eligibility or qualifications for office is neither structural nor procedural. We think that's just a flat-out wrong reading of the decision. This is all set forth, as I said, on page 5 in their head note 3 of the court's discussion in CBA 2. Justice Hoffman, you read from that extensively yourself. And then finally, they talk about in their briefs and here in their argument that because it's broader, it should be read as a whole. And as I said before, that's precisely the type of problem that the court encountered in CBA 1 when it rejected the notion that you read the initiative as a whole and instead it should be taken and that each individual element must be either structural or procedural. In that case, the vote or the increase the vote required to pass tax increase legislation. In our papers, we set forth the argument that we don't believe that this includes both structural and procedural. We don't think the vote requirement to override the governor is a procedural subject because the Supreme Court said that increasing the vote requirement to pass one type of bill, tax increase bill, did not meet either structural or procedural. So increasing the vote to pass all bills is likewise not a procedural subject. So we don't concede that these other elements setting aside term limits are both structural and procedural. But again, I'm not sure that the court needs to reach this because this case clearly runs afoul of both CBA 2 and CBA 1. They are the knockout punch that rendered this initiative constitutionally infirm. As for Article 3, Section 3, I think that the court in Coalition 2 has established a standard. I think we all agree on that standard that the questions, the subjects included in an initiative, must be reasonably related to a common objective in a workable manner. What does that mean, workable manner? Well, workable manner, in the cases that they cite and that we cite, a workable manner means such that if you separate one from the other and one were to pass and the other were not, does it work or do things get all messed up? The cases that we both cite in our papers deal with school referenda. Should we build a new high school gym? Should we issue the bonds to pay for it? So if the gym were to pass but without the bonds, does it work? In the Richardson case that is cited, it talks about county form of government and home rule status. And if you pass one without the other, things don't work and they don't flow and the government is disrupted for a time. In this case, if you separate term limits from the number of votes, nothing goes awry. Everything works the same. Those two have nothing in common. Those two subjects have absolutely nothing in common with one another other than they both appear in Article IV. One is not at all necessary to do the other. And so that is, I think, what the workable manner standard is. And would there be any reason whatever to discuss the free and equal clause if counsel's position were correct that the common objective may only be an amendment to Article IV? No, but I believe that their argument effectively renders Article III, Section 3, the free and equal clause, inapplicable to Article XIV, Section 3. Exactly. There would be absolutely no reason whatever to discuss the free and equal clause if the only objective that each element had to have was the amendment of Article IV. Right. Because then you discuss it on structure and procedure. Right. Because that limitation appears in Article XIV already. Yeah. Right. And so, yeah, we believe that their argument would effectively invalidate the free and equal clause as applied to these types of initiatives. Counsel, can I ask you about the, I forgot to ask other counsel about this, Supreme Court Rule 316 and certifying this for the Supreme Court. Yes. We pointed out in our brief that the request under 316 to certify the question is procedurally inappropriate. It's only proper for a party to raise that question in conjunction with a petition for a rehearing or as a separate petition after the decision is rendered. The cases that warrant that type of activity are cases of first impression. This is clearly not a case of first impression. Well, whether it is granted or it's not granted, your argument is essentially it has come at a premature time. Yes. Correct. They can raise it in their petition for rehearing if they wish. They can raise it separately, but it has to come after we decide the case. Correct. Correct. And I would point out that they've already previously filed a petition under 302B to try and get the Supreme Court to take the case, and the Supreme Court denied their petition to take the case. But we do have constitutional authority to issue a certificate of importance. Of course. One of the two things the Constitution allows us to do, hire our own clerk and force the Supreme Court to take cases. We have rights. Other than that, we have no rights. That's all I have unless there are any other questions. Thank you very much. Thank you. Mr. Eaton. Let me just address a few points the Council made, because we actually are in agreement. I mean, part of the argument was that we cannot send something up that's neither structural or procedural. And in my exchange with Justice Hoffman, I indicated I agree. Term limits has to fit into one of those categories. And we believe that it changes the procedure in which the Senate is elected, and that is different from CBA 2. The other thing that, in fact, I think also Justice Hoffman brought this up, if you read Coalition 1, the rationale for the and versus the or was if the defendant's construction of the section were adopted, would it unnecessarily use the word structural procedure for any change in the article would be either structural or procedural in character. Now, what's missing from Council's argument is how does CBA 2 make any sense under that analysis, because every change to Article 4 would either be one or the other. It doesn't make any sense. There's really no rationale for CBA 2. I understand this is the Supreme Court. And so the only explanation when they reaffirm. You might think that. We can't say that. The only rationale, it seems to me, because they said we're filing several precedent, they cite the Coalition 1, is to then read it narrowly so that it's cabined within only individual qualifications and eligibility requirements. And when you do more, when the term limits does more, as it does in this case, that distinguishes it. That's the only way that CBA 2 makes sense if you read it literally in terms of its affirmation of prior precedent. The other thing I wanted to mention is I do agree with Mr. Casper that each individual element does not need to be both structural and procedural, as long as they're one or the other combined, there has to be both elements. And we agree on that point. And I don't think that's been made clear in the case law, but I think Coalition 2 makes that clear. Also, I think that you have to read the Free and Equal Clause. Your Honor, I understand exactly what you were saying. Well, then they're making an exception to Article 4. But if you read the case law and how it's interpreted in Coalition 2, it said there should be some deference to citizens' initiatives. So I'm not saying, as Justice Lavalin suggests, well, what if there are 25 changes? Sure. Could you maybe draw the line there? Perhaps. But what we have here is we believe an initiative that will increase responsiveness, it actually boils down to two or three questions, not 25, and we believe it meets the testament of free and equal because there's no case that is ever held that there's a violation of free and equal where you have components. For example, they cite the case where they involve a referendum dealing with schools. Well, part of that was a new high school. Part of that was repairing the grade school. Those were separate elements. What if you wanted to do the high school but not the grade school? Then there's the bond. So these issues come up all the time, but we believe this is related enough. And finally, with respect to 316, as this Court is well aware, it is your constitutional right to certify, and all we are suggesting is that you do that. We're not using the provision that says the parties may come in at a pre- We're not suggesting you can't ask us. That's all I'm doing. What Mr. Casper is saying, and I think at least my position is, you shouldn't ask us until after we rule. And you get to do that in a petition for rehearing, or you get to do it in a freestanding pleading. And I have an August 22nd deadline, and, Your Honor, all I was doing was saying, A, this is one you should consider suspending. Counsel, did you take us up the Supreme Court under 302B, which is a public interest requirement? Yes. Yeah. We did. They denied it on that. Correct. But all that means is that they wanted the benefit of your opinion. Can we end with that? Thank you so much.